<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JOEL ROSENBERG,

        Plaintiff,

        v.

HOTEL CONNECTIONS, INC., *et. al.*,

        Defendants.

Civil Action No. 21-4876 (ZNQ) (TJB)

**OPINION**

<u>**QURAISHI, District Judge**</u>

    **THIS MATTER** comes before this Court on a Motion to Compel Arbitration and Stay the Proceeding Pending Arbitration, or in the alternative, a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), ("the Motion," ECF No. 9), filed by Defendants Hotel Connections, Inc. ("Defendant Hotel"), Flagler Holdings, VI, Inc. ("Defendant Flagler"), Kenneth Shanley and Vivian Andrea Shanley, (collectively, "Defendants"). Defendants filed a brief in support of the Motion. ("Moving Br.", ECF No. 9-1.) Plaintiff Rosenberg ("Plaintiff") opposed the Motion ("Opp'n Br.", ECF No. 10), and Defendants replied ("Reply Br.", ECF No. 11). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1, for the reasons set forth below, the portion of the Motion seeking to compel arbitration will be GRANTED and the portion seeking to dismiss the case will be DENIED.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a former employee of Defendant Hotel Connections, Inc., who began working as the Chief Financial Officer ("CFO") on May 23, 2011 out of the company's Jersey City, New Jersey office.  (Complaint, ECF No. 1 ¶¶ 5, 20, 21.)  The terms of Plaintiff's employment were set forth in a contract dated May 23, 2011 that includes an arbitration clause.  ("Employment Agreement", ECF No. 9-1 Ex. A.)  The specific terms of the clause are as follows:

> Subject to the duty to negotiate and mediate set forth above, all disputes, claims, or causes of action arising out of or relating to this Agreement or the validity, interpretation, breach, violation, or termination thereof not resolved by negotiation and/or mediation shall be finally and solely determined and settled by Arbitration, to be conducted in the State of New York, USA, in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) in effect at the date of Arbitration.

(*Id*. at 7.)

Hotel Connections, Inc. is a business involved in the procurement of hotel rooms and lodging for airline crews.  (*Id*. ¶ 17.)  During all relevant times, Plaintiff alleges Defendant Kenneth Shanley was the owner, President, and Chief Executive Officer of Hotel Connections, Inc.  (*Id*. ¶ 18.)  At the time of Plaintiff's termination, Defendant Vivian Andrea Shanley was an owner of Hotel Connections, Inc.  (*Id*. ¶ 19.)

In October of 2013, Defendant Hotel moved its primary office from Jersey City, New Jersey to Miami, Florida.  (*Id*. ¶ 22.)  Plaintiff Advised Defendant Kenneth Shanley that he was not willing to relocate to Florida.  (*Id*. ¶ 23.)  Nonetheless, Defendant Kenneth Shanley informed Plaintiff that he wanted Plaintiff to remain employed as the CFO by the following email message on September 19, 2013:

> "I want u [sic] to stay with me. I love the fact that you have my back no matter what. I'm going to pay you a fee of 100k per year till I feel there's no benefit or till I feel I should terminate the

2

> agreement. I would like you to come to Miami one week a month which I will pay for all expenses.
> Joel, this can last for a very long time. I so much value you and your support."

(*Id*. ¶ 25.)

Three minutes after Defendant Kenneth Shanley's initial email, he sent Plaintiff a follow-up email stating the following: "I will pay you a fee of 2% in the event [Hotel Connections] is sold while you're under contract." (*Id*. ¶ 28.)[1]

The $100,000 salary meant a $60,000 cut in Plaintiff's annual base compensation. (*Id*. ¶ 26.) Plaintiff remained with the company due to Defendant Kenneth Shanley's promise to pay him the 2% company sale fee bonus. (*Id*. ¶ 29.)

On August 10, 2020, Defendant Hotel was sold to Fleetcor Technologies Corp. for $75,000,000.00. (*Id*. ¶ 31.) In addition to the $75,000,000.00 payment, Defendant Hotel was also entitled to receive an additional "earn out" payment based on the company's third-quarter revenues in 2021. (*Id*. ¶ 33.) Plaintiff alleges that based on historical revenues Defendant Hotel will likely receive approximately $30,000,000.00 to $60,000,000.00 in additional "earn out" payments for the period. (*Id*. ¶ 34.)

Plaintiff alleges he was still under a contract of employment with the company at the time of the sale. (*Id*. ¶ 36.) Therefore, he is entitled to the 2% sale fee bonus based on the September 19, 2013 email. (*Id*. ¶ 38.) Defendants, however, have refused to honor the sale bonus payment. (*Id*. ¶ 39.)

Defendant Kenneth Shanley on August 6, 2020, emailed Plaintiff a draft Consulting Agreement, which would pay Plaintiff a $400,000 "Transaction Bonus" if he signed a

---

[1] For clarity, the emails from September 19, 2013 will be referenced herein as "the Emails."

3

comprehensive release waiving all claims against the company and remained in a consultant-like position for the next year.  (*Id.* ¶¶ 40, 41.)

Plaintiff did not sign the Consulting Agreement.  (*Id.* ¶ 43.)  Plaintiff emailed Defendant Kenneth Shanley a copy of the September 2013 emails regarding his 2% sale fee bonus and encouraged Defendant Kenneth Shanley to share them with legal counsel.[2]  (*Id.* ¶ 45.)  Defendant Kenneth Shanley replied to Plaintiff claiming the emails have no legal effect.  (*Id.* ¶ 46.)  On October 9, 2020, Defendants terminated Plaintiff's employment by way of a termination letter signed by Defendant Vivian Andrea Shanley.  (*Id.* ¶¶ 47, 48.)

II.   **DISCUSSION**[3]

    A.   **WHETHER THE CHOICE OF LAW PROVISION IS ENFORCEABLE**

Before addressing the enforceability of the arbitration agreement, the Court must address the parties' choice of law dispute.  The parties disagree whether the Employment Agreement is bound by New York or New Jersey law.

The Employment Agreement included a choice of law provision indicating the following:

> This Employment Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to principles of conflict of laws, and any litigation or arbitration relating to the Agreement shall be held in New York.

("Employment Agreement", ECF No. 9-1 at Ex. A).  The parties dispute whether this choice of law clause is enforceable.

In evaluating whether a contractual choice of law clause is enforceable, federal courts sitting in diversity apply the choice of law rules of the forum state.  *Nuzzi v. Aupaircare, Inc.*, 341

---

[2] Paragraph 45 of the Complaint refers to the date of the 2% sale fee bonus emails between Plaintiff and Defendant Kenneth Shanley as September 13, 2013, rather than September 19, 2013 as recited in paragraphs 25, 27, and 46.  The Court infers September 19, 2013 to be the correct date, but this is not a dispositive issue.
[3] The Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the matter in controversy exceeds a value of $75,000.  (*See* ECF No. 1.)

4

F. App'x. 850, 852 (3d Cir. 2009) (quoting *Homa v. American Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009)). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Systems, Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (1992). New Jersey applies Section 187 of the Restatement (Second) of Conflicts of Laws, which provides that a choice of law provision will not be honored if:

> a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id*. at 342 (citing Restatement (Second) of Conflicts of Laws § 187).

Defendants argue that in New Jersey, choice of law provisions like the one in the Employment Agreement are generally enforced. (Moving Br. at 7, n.7. (citing to *Instructional Sys.,* 130 N.J. at 341–42).) Thus, New York law should apply. (*Id*. at n.7.)

Plaintiff argues that New Jersey law should apply, despite the Employment Agreement's New York choice of law provision. (Opp'n Br. at 5.) He contends that the choice of law provision within the Employment Agreement should be rejected under either of the adopted by *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183–84 (3d Cir. 2017). Under the first *Restatement* test, Plaintiff argues that New York has no substantial relationship to the parties or this action. (*Id*. at 7.) According to Plaintiff, this is because the actions surrounding his hiring and practically all of his job duties were performed in New Jersey. (*Id*. at 6–7.) Under the alternate *Restatement* test, Plaintiff argues that application of New York law would be contrary to the public policy of New Jersey, which has a greater interest in this litigation because Plaintiff lives in New Jersey, Plaintiff

negotiated and signed his employment agreement in New Jersey, Plaintiff worked in New Jersey until relocation to Florida, and Plaintiff brings his claims under New Jersey law, which has evidenced a strong public policy in favor or protecting payment of employees. (*Id*. at 8–9.)

Assuming the application of New Jersey law, Plaintiff argues that enforcing this arbitration clause would be contrary to New Jersey public policy because its language is not sufficiently clear and unambiguous to waive his right to a jury trial under *Atalese v. Legal Services Group*, 219 N.J. 430 (2014). (*Id*. at 10.) The result, Plaintiff argues, would not be the same under New York law. (*Id*.)

In their reply, Defendants reiterate that New Jersey courts generally enforce choice of law provisions. (Reply Br. at 2.) Defendants contend that Plaintiff's arguments that (1) New York law is contrary to New Jersey public policy and that (2) New York does not have a substantial relationship to the parties or the transaction, are misguided. (*Id*.) Defendants maintain that New Jersey public policy is not an impediment to the application of New York law to this action. (*Id*.) They dispute Plaintiff's contention that *Atalese* requires a different result because this case involves negotiations between parties of similar bargaining power, rather than a one-sided debt-collection services arbitration agreement. (*Id*. at 3.) Defendants further argue that New York has a substantial relationship to this matter because Defendant Hotel was incorporated in New York at the time Plaintiff signed the Employment Agreement and Plaintiff frequently worked in New York state. (*Id*. at 4.)

In New Jersey, "the substantial relationship test . . . is satisfied where a contract's choice of law agreement has selected the substantive law of the state in which one of the parties is incorporated." *Emcon Assocs. Inc. v. Zale Corp., Sterling Jewelers Inc.*, Civ. No. 16-1985, 2016

WL 7232772, at *4 (D.N.J. Dec. 14, 2016) (citing *North Bergen Rex Trans., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 569 (N.J. 1999)).

Here, although Defendant Hotel is not currently incorporated in New York, at the time of execution of the Employment Agreement, Defendant Hotel was incorporated in New York. (Compl. ¶ 22.) New York therefore does have a substantial relationship to the parties or transaction in this matter.[4] Accordingly, Plaintiff's challenge to the application of New York law fails under part (a) of the Restatement.

For part (b) of the Restatement to apply, Plaintiff must establish three elements: (1) that New Jersey has a materially greater interest than New York in the determination of this dispute, (2) that application of New York law on the enforceability of arbitration agreements would be contrary to New Jersey's public policy, and (3) that New Jersey law would apply in the absence of an effective choice of law clause. *Diversant, LLC, v. Carino*, Civ. No. 18-3155, 2018 WL 1610957, at *3 (D.N.J. April 2, 2018).

With respect to the first element, New Jersey Courts focus on the dispute-related contacts or relationships with the relevant states to determine which state has a materially greater interest. *See, e.g., Chemetall US Inc. v. Laflamme*, Civ. No. 16-780, 2016 WL 885309, at *7–8 (D.N.J. March 8, 2016) (discussing connections to, and contacts with, the two competing states of New Jersey and Indiana); *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, Civ. No. 13-4770, 2014 WL 4662223, at *3 (D.N.J. Sept. 18, 2014) (focusing on contacts, not state policy, for materially greater interest analysis).

---

[4] Insofar as the Court finds that Defendant Hotel's incorporation in New York satisfies the substantial relationship test, it does not reach a Declaration submitted by Defendant Kenneth Shanley (ECF No. 11-1) that asserts additional facts with respect to the parties' connections to New York. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) ("[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.") (interior quotation marks omitted).

Emphasizing the parties' contacts with the state of New Jersey, Plaintiff argues New Jersey has a materially greater interest than New York in this dispute. (Opp'n Br. at 9.) As Plaintiff explains, he "lives in New Jersey," he "negotiated and signed his Employment Agreement in New Jersey," he "worked in New Jersey," "[Defendant Hotel's] primary headquarters were located in New Jersey," and "he brings his claims under New Jersey statutory law." (*Id*.) Defendants respond that "Plaintiff is a sophisticated executive who actively negotiated his Employment Agreement and agreed to New York law." (Reply Br. at 3.)

There is no question that New Jersey has a substantial relationship to this dispute and a material interest in enforcing a New Jersey resident-plaintiff's rights in an employment contract. Nevertheless, New Jersey does not have a *materially greater* interest than New York in this dispute. The parties negotiated and agreed to apply New York law to their Employment Agreement. Defendant Hotel services clients in New York. Most importantly, as noted above, Defendant Hotel was incorporated in New York at the time of the execution of the Employment Agreement. New York therefore has a materially greater interest than New Jersey. Accordingly, the Court need not reach the second and third elements. *See Diversant, LLC*, 2018 WL 16110957, at *4. The choice of law clause is enforceable and New York law governs.[5] The Court turns next to whether the Employment Agreement's arbitration clause is enforceable under New York Law.

B. **WHETHER THE ARBITRATION PROVISION IS ENFORCEABLE**

"[T]he FAA's primary purpose [is to] ensur[e] that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989). Despite the "liberal federal policy favoring arbitration

---

[5] This conclusion is not especially impactful insofar as at least two district courts have observed that New Jersey and New York apply similar standards to determine the enforceability of arbitration agreements. *See Gold Lion Steel, LLC v. Global Merchant Cash, Inc.*, Civ. No. 21-10702, 2022 WL 596997, at *4 n.2 (D.N.J. Feb. 28, 2022); *Kozur v. F/V Atl. Bounty, LLC*, Civ. No. 18-8750, 2020 WL 5627019, at *6 (D.N.J. Aug. 18, 2020)

8

agreements," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960)) (internal quotation marks omitted).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25. "Accordingly, federal policy requires us to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (brackets and internal quotation marks omitted). Therefore, we will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

In the Second Circuit, courts follow a two-part test to determine the arbitrability of claims. *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement. *ACE Capital Re Overseas Ltd. v. Centennial United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002); *accord John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998). Before addressing the second inquiry, the Court must also determine who—the court or the arbitrator—properly decides the issue. *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011).

        1.    <u>Whether the Parties Have Entered into a Valid Agreement to Arbitrate Under New York Law</u>

Plaintiff concedes the arbitration clause complies with New York law, which suffices for the purposes of the Motion. (Opp'n Br. at 17) ("If applying New York law rather than New Jersey law, the only issue in dispute in this motion is whether Plaintiff's claims as set forth in his Complaint fall within the scope of the arbitration provision in his Employment Agreement.")

        2.    <u>Whether Plaintiff's Claims are Within the Scope of the Arbitration Clause</u>

Finally, the Court must determine whether the dispute at issue comes within the scope of the arbitration agreement. The Court must first determine whether the Court or the arbitrator properly decides the issue.

The Supreme Court has distinguished between "question[s] of arbitrability," which are "issue[s] for judicial determination[, u]nless the parties clearly and unmistakably provide otherwise," *AT & T Techs.*, 475 U.S. at 649, and "other gateway matters, which are presumptively reserved for the arbitrator's resolution," *Republic of Ecuador*, 638 F.3d at 393 (internal quotation marks omitted). Among "questions of arbitrability" presumptively reserved for a court, the Supreme Court has identified "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam*, 537 U.S. at 84.

Where the arbitration agreement is broadly worded to require the submission of "all disputes" to the arbitrator, the parties intended to arbitrate the question of arbitrability. *Shaw Group Inc. v. Triplefine International Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (arbitrator to arbitrate the arbitrability of the dispute where parties agreed that "[a]ll disputes ... concerning or arising out of this Agreement shall be referred to arbitration."). Similarly, the Second Circuit has interpreted the terms "any and all" to be "elastic enough to encompass disputes over whether a claim is within the scope of the arbitration." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d

Cir. 1996) (arbitration as to arbitrability is appropriate where the parties' arbitration agreement stated that "any and all controversies . . . concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration.").

Here, the arbitration clause is very broad and mandates arbitration for "all disputes, claims, or causes of action arising out of or relating to this Agreement or the validity, interpretation, breach, violation, or termination thereof not resolved by negotiation and/or mediation[.]" (Employment Agreement at 7.)  Therefore, the Court finds that the parties intended to arbitrate the question of arbitrability and that an arbitrator must resolve the question of whether Plaintiff's claims are within the scope of the parties' arbitration agreement.

### III. **CONCLUSION**

For the reasons stated above, the Court concludes that the Employment Agreement — including its arbitration clause — is valid, and that it was the parties' intention to arbitrate the issue of the arbitrability of Plaintiff's claims.  As such, Defendants' Motion to Compel Arbitration or Dismiss will be GRANTED IN PART and DENIED IN PART.  The Court will GRANT the Motion to Compel Arbitration and DENY AS MOOT the Motion to Dismiss.  The Court will also STAY this matter pending the outcome of Arbitration.  *See Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing 9 U.S.C. §§ 3, 4).

Date: **October 13, 2022**

                                                s/ Zahid N. Quraishi
                                                **ZAHID N. QURAISHI**
                                                **UNITED STATES DISTRICT JUDGE**